FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2013 JAN 17  P 3: 14

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| GLOBAL TEL*LINK CORPORATION,<br>12021 Sunset Hills Road, Suite 100<br>Reston, VA 20190<br><br>    Plaintiff,<br><br>    v.<br><br>JAIL CALL SERVICES, LLC,<br>3523 McKinney Avenue, Suite 750<br>Dallas, TX 75204<br><br>    **Serve:**  United States Corporation Agents, Inc.<br>               Registered Agent<br>               10900 South Stonelake Blvd.<br>               Suite A-320<br>               Austin, TX 78759<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. *1:13CV 75-LO/TCB* |

## COMPLAINT

COMES NOW Plaintiff Global Tel*Link Corporation, by counsel, and states the

following as its complaint against Defendant Jail Call Services, LLC.

## PARTIES

1.        Plaintiff Global Tel*Link Corporation ("GTL" or "Plaintiff") is a Delaware

corporation with its headquarters in Mobile, Alabama and a management office in Reston,

Virginia. GTL is authorized to do business in the Commonwealth of Virginia.

2.        GTL provides correctional facility telecommunications services and resells

certain transmission services to telecommunications carriers, VoIP service providers, prepaid

card service providers, payphone service providers, and others.

3.       Defendant Jail Call Services, LLC ("JCS") is a Texas limited liability company. Upon information and belief, JCS's principal place of business is in Texas.

4.       Upon information and belief, JCS is a direct competitor of GTL, engaged in reselling telecommunications service for correctional facilities at locations around the country and markets to potential customers via its website and direct marketing efforts in many states, including the Commonwealth of Virginia.

## NATURE OF CASE, JURISDICTION, AND VENUE

5.       This is an action for trademark infringement under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and common law trademark infringement.  The Court has jurisdiction over this action under 28 U.S.C. §§1331, 1332 and 1338, as well as 15 U.S.C. § 1121.  The amount in controversy, exclusive of costs and interests, exceeds Seventy-Five Thousand Dollars ($75,000.00).

6.       This Court has personal jurisdiction over JCS because it engages in marketing and sales to customers around the country, including in Virginia, and has engaged in conduct that was intended to and did result in harmful effects to GTL in Virginia.

7.       Venue is proper in this district under 28 U.S.C. §1391.

## FACTS

### GTL's Trademarks

8.       GTL owns the marks GLOBAL TEL*LINK and OFFENDERCONNECT (collectively, the "GTL Marks") and commenced use of these marks in commerce, which lawfully may be regulated by Congress, at least as early as 1989 with regard to GLOBAL TEL*LINK.  GTL began using the mark OFFENDERCONNECT through its wholly-owned subsidiary, DSI-ITI, LLC ("DSI"), as early as July 8, 2009.  GTL uses these marks in connection

2

with providing telecommunications services to correctional facilities and providing a website through which customers can manage account information related to such telecommunications services. Since the above-referenced dates, GTL has continuously used the GTL Marks in commerce and has prominently, exclusively, and extensively used, advertised, and promoted such marks on its websites www.gtl.net and www.offenderconnect.com, and in various promotional materials.

9.      As a result of the continuous use and promotion of the GTL Marks by GTL, these trademarks have become distinctive to designate GTL and its services from the services of other businesses, and to distinguish GTL as the source or origin of such services.

10.      GTL expended significant resources and investment to establish and build GLOBAL TEL*LINK and OFFENDERCONNECT as distinctive and well-known marks, particularly in the correctional facility industry. As a result, the trade and the consuming public have come to associate these marks with the superior quality of the services offered by GTL under the GTL Marks.

11.      On September 25, 2006, GTL applied for registrations of the mark GLOBAL TEL*LINK for "[p]roviding biometric, video, and audio surveillance and monitoring, namely monitoring and recording telephone calls from prison inmates and notifying correctional and emergency facilities," "[l]ocal and long distance telephone services; [p]repaid long distance telephone services; [t]elephone communication services; [t]elephone telecommunications services provided via prepaid telephone calling cards," and "[b]ill payment services; [e]lectronic payment, namely, electronic processing and transmission of bill payment data; [m]aking payments on pre-paid long distance calling cards for recharging minutes; [p]repaid

telecommunications calling card services; and [t]elephone calling card services" with the United States Patent and Trademark Office ("USPTO").

12.     The USPTO granted GTL registrations for GLOBAL TEL*LINK on October 23, 2007, issuing Registration Numbers 3,315,464, and 3,315,465, and 3,315,466.  These registrations were duly and legally issued, and are valid, subsisting and incontestable.  A copy of these registrations are attached collectively as **Exhibit A**.

13.     On July 28, 2009, GTL applied for registration of the mark OFFENDERCONNECT, for "[p]roviding a website at which customers can manage account information related to telecommunications products and services" with the USPTO.

14.     The USPTO granted DSI a registration for OFFENDERCONNECT on April 6, 2010, issuing Registration Number 3,770,529.  This registration is duly and legally issued, and is valid and subsisting.  A copy of this registration is attached as **Exhibit B**.  DSI became a wholly-owned subsidiary of GTL subsequent to that date.

**JCS's Infringing Activities**

15.     JCS had no use of the GLOBAL TEL*LINK and OFFENDERCONNECT marks at the time GTL applied to register such marks with the USPTO.

16.     JCS had constructive notice of GTL's trademark rights in its GLOBAL TEL*LINK and OFFENDERCONNECT marks as of at least September 25, 2006 and July 28, 2009, respectively.  Upon information and belief, JCS also had actual notice and knowledge of GTL's rights in such marks.

17.     Upon information and belief, JCS had actual knowledge of the goodwill associated with GTL's marks prior to the selection by JCS of the name and marks "global

tel*link" as keywords for directing consumers to JCS's advertising and JCS's website, as explained in detail below.

18.      Despite JCS's actual and constructive knowledge regarding GTL's prior and superior rights in the GTL Marks, and without GTL's authorization, JCS has infringed upon GTL's rights to such marks.

19.      JCS's website bearing the electronic address, "www.jailcallservices.com," utilizes and advertises the GTL Marks in a manner inconsistent with GTL's rights in such marks. By way of example, and without limitation, the banner of JCS's website, prominently displays the following: "Jail Call Services - Global Tel Link ¦ SecurusTech.net ¦ Offender Connect ¦ Securustech.net ¦ IC".

20.      JCS also has hidden the GTL Marks as "metatags" on its website. The metatags are not visible to a computer user, but can cause, and do cause, search engines looking for GTL's services to list JCS's website in search results. These metatags attract customers searching for GTL's services to JCS's website that promotes its own services. The code contains repeated references in hidden text to the GTL Marks.

21.      JCS also incorporates the GTL Marks in its advertising campaign. In this respect, JCS bought the GTL Marks, trade name, and the phrase "global tel" as keywords to divert users looking for GTL to JCS. As of January 2013, whenever a user of the Google search engine types "global tel link" or "global tel" into the search field, the first link at the top of the page is for JCS's website stating:

> **Global Tel*Link** Jail Call - Don't Pay By the Minute
> www.jailcallservices.com/**GlobalTelLink**
> Unlimited Calls = Now $8.25/Month

Once a potential client clicks on the link, which features "Global Tel Link" in its subdomain, JCS's website asks the potential client to send an email to waive the activation fee. Upon sending the email, a person from JCS calls the potential client back and does nothing to inform the potential client that they have reached a company other than GTL.

22.     In or about November 2012, this set of events happened to a potential GTL customer. This customer, living in Georgia, attempted to sign up for GTL services, and ran a Google search for GTL. She clicked on the link with "Global Tel*Link" in the heading, and sent an email to the requested address. She received a follow up telephone call from someone who she believed to be a GTL representative, who took her credit card information. The customer conducted research and found out that the representative was from Jail Call Services and not GTL, and the customer then canceled her credit card. At no point did the operator indicate that she was collecting information on behalf of Jail Call Services.

23.     Additionally, JCS utilizes automated attendants to call and solicit potential customers to set up an account immediately after those potential customers receive phone calls from someone in jail using the GTL services, the proximity of which causes potential customers to believe that GTL is calling them to set up an account.

24.     JCS's activities are likely to cause confusion or mistake or to deceive consumers into believing that its website, products, and/or services are sponsored, licensed, affiliated, or associated with GTL, or that GTL's services are associated with JCS.

25.     Consumers searching for GTL's products and services will be diverted to JCS's website through JCS's unauthorized use of the GTL Marks. Therefore, JCS will unfairly benefit by having access to potential consumers through the goodwill created by the GTL Marks.

6

26.     GTL is aware of instances where consumers have been redirected to JCS through JCS's deceptive use of the GTL marks. Examples of the types of complaints lodged against JCS for its deceptive behavior are found on consumer websites such as www.scambook.com. *See* http://www.scambook.com/company/view/70308/Jail-Call-Services and http://www.scambook.com/report/view/172187/Jail-Call-Services-Complaint-172187-for-$64.89, reflecting customers confusing GTL and JCS.

27.     Consumers who have been deceived by JCS and mistakenly believed that they were dealing with GTL are then unwilling to use GTL or any similar telephone service out of fear that they are all involved in a scam, which is wholly inaccurate and unfair with regard to the services provided by GTL. That deception has resulted, and will continue to result in the loss of thousands of dollars in business and corresponding financial harm to GTL.

28.     JCS's use of GTL's marks is irreparably harming the reputation of GTL in that JCS has provided inferior or non-existent services to consumers and has not responded to consumer complaints. GTL's reputation has been harmed based on countless complaints lodged by consumers who have used JCS's services.

29.     GTL has previously demanded that JCS cease and desist from using the GTL Marks, and any other trademarks or trade names that belong to GTL or its subsidiaries. Copies of GTL's demand letters dated August 14, 2012 and September 21, 2012 are attached collectively as **Exhibit C**.

30.     JCS did not respond to GTL's demands and continues to use the GTL Marks and infringe upon GTL's rights therein.

31.     Upon information and belief, JCS will continue to use the GTL Marks to promote its goods and services and improperly redirect, divert, mislead and deceive consumers for its own benefit, unless enjoined by the Court.

### Count I
### (Federal Trademark Infringement)

32.     GTL repeats the allegations of paragraphs 1- 32 above as if fully set forth herein.

33.     The GTL Marks are valid and subsisting federally registered trademarks. By virtue of these registrations, the GTL Marks are entitled to protection under the Trademark Act, 15 U.S.C. §§ 1051, *et seq*.

34.     JCS's use of the GTL Marks is likely to cause confusion, mistake, or deception as to the source or origin of GTL's services in that customers and potential customers are likely to believe that the services provided by JCS through its respective website or otherwise are provided by, sponsored by, licensed by, affiliated, or associated with, or in some other way legitimately connected to GTL or its services under the GTL Marks.

35.     JCS's use of the GTL Marks in its website banner, in metatags, and in sponsored links in Google search results was intentional and was for the purpose of misleading consumers and causing potential/existing customers of GTL to be diverted to JCS's website instead of GTL-affiliated websites. These willful actions are in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

36.     As a result of JCS's infringement, as described above, consumers are likely to be confused and deceived as to the source, sponsorship, affiliation or approval of GTL's services, marketed under its protected trademarks, and JCS's competing services.

37.     GTL has been damaged by the aforementioned acts in an amount to be determined at trial. JCS's use of the GTL Marks throughout its website, as metatags, and in

sponsored links in Google search results was undertaken by JCS intentionally, maliciously, and in bad faith. Therefore, GTL is entitled to recover from JCS, in additional to actual damages, punitive damages and attorneys' fees.

38.     In addition, JCS's conduct, if it continues, will result in irreparable harm to GTL and, specifically, to the goodwill associated with the GTL Marks, unless such conduct is enjoined.

## Count II
### (Common Law Trademark Infringement)

39.     GTL repeats the allegations of paragraphs 1-39 above as if fully set forth herein.

40.     The GTL Marks are valid, protectable, and distinctive.

41.     JCS's use of the GTL Marks is likely to cause confusion, mistake, or deception as to the source or origin of GTLs services in that customers and potential customers are likely to believe that the services provided by JCS through its website or otherwise are provided by, sponsored by, licensed by, affiliated, or associated with, or in some other way legitimately connected to GTL or its services under the GTL Marks.

42.     JCS's acts constitute trademark infringement under the common law.

43.     JCS's acts were taken in willful, deliberate, and/or intentional disregard of GTL's trademark rights.

44.     GTL has been damaged by the aforementioned acts in an amount to be determined at trial. JCS's use of the GTL Marks throughout its website, as metatags, and in sponsored links in Google search results was undertaken by JCS intentionally, maliciously, and in bad faith. Therefore, GTL is entitled to recover, in additional to actual damages, punitive damages and attorneys' fees.

45.     In addition, JCS's conduct, if it continues, will result in irreparable harm to GTL and, specifically, to the goodwill associated with the GTL Marks, unless such conduct is enjoined.

### Count III
### (False Advertising Under Lanham Act)

46.     GTL repeats the allegations of paragraphs 1-46 above as if fully set forth herein.

47.     JCS, by using the GTL Marks throughout its website and through its keyword search engine advertising scheme, is misleading and/or deceiving, and/or has the potential to mislead and/or deceive, consumers regarding the origin of its services.

48.     JCS's advertising schemes not only rely entirely on the goodwill of the GTL Marks and tradename to attract customers, but also are calculated to obscure GTL's trademarks and the links to GTL, and to divert those customers to JCS. By posting JCS's competitive advertising prominently ahead of the search results sought by consumers, JCS is obscuring information and misdirecting consumers to JCS's sites, or to sites about JCS's products and services.

49.     On information and belief, the use of the GTL Marks by JCS as keywords for its Internet advertising was done with full knowledge of GTL's rights to and registrations of the GTL Marks, and with the full intent of misleading customers attempting to use those marks as the law intended -- as designations to locate the products and services of GTL -- and wrongfully to divert customers away from GTL.

50.     JCS's wrongful uses of the GTL Marks on its website and through its advertising schemes are material and are likely to influence a consumer's purchasing decision by establishing a false association about the nature, quality or characteristics of JCS's services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51.     JCS caused its use of the GTL Marks, to enter interstate commerce through use of its website.

52.     GTL has been damaged by the aforementioned acts in an amount to be determined at trial, through direct diversion of sales and/or by a lessening of the goodwill associated with the GTL Marks and its services. JCS's use of the GTL Marks throughout its website, as metatags, and in sponsored links in Google search results was undertaken by JCS intentionally, maliciously, and in bad faith.

## Count IV
### (Tortious Interference with a Business Expectancy)

53.     GTL repeats the allegations of paragraphs 1-53 above as if fully set forth herein.

54.     GTL had business expectancies with respect to consumers purchasing its services.

55.     As competitors to GTL, JCS had knowledge of these expectancies.

56.     JCS has intentionally interfered with GTL's business expectancies by diverting consumer business from GTL.

57.     By juxtaposing JCS's competitive advertising and obscuring GTL's, JCS is competing directly against GTL and tortiously interfering with GTL's relationships with its customers or prospective customers, who are employing Google's search engine with the specific intent to locate GTL's products and services.

58.     By using improper methods to interfere with such expectancies, including without limitation, posting JCS's competitive advertising prominently ahead of the search results sought by consumers and using the GTL Marks throughout its website as metatags, JCS is obscuring information directing consumers to GTL's sites, or to sites about GTL's products and

services. JCS has also improperly employed an automated attendant to attempt to misdirect consumers.

59.      Each of these improper methods has been done by JCS to interfere with GTL's expectancies and to confuse, deceive and misdirect consumers.

60.      In diverting business from GTL, JCS is acting maliciously to harm GTL and financially benefit from such harm.

61.      As a direct and proximate result of JCS's actions, GTL has suffered, and will continue to suffer, damages. GTL's reputation with its customers and potential customers has been damaged by JCS's actions.

62.      Absent JCS's conduct, GTL would have realized its business expectancies.

63.      JCS's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of GTL. Therefore, GTL is entitled to an award of punitive damages.

**COUNT V**

**(False Designation of Origin and Unfair Competition
Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

64.      GTL repeats the allegations of paragraphs 1-64 above as if fully set forth herein.

65.      The acts of JCS complained of herein constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.      Upon information and belief, JCS has acted with the intention of causing confusion, mistake or deception, and of misappropriating the goodwill associated with the GTL Marks to profit thereby to the detriment of GTL.

67.      By reason of JCS's unfair competition and/or inducement of others to compete unfairly, and/or continued unauthorized use of GTL's tradename and marks, and use of

automated attendants, in a manner which it knows aids others to compete unfairly with GTL, GTL is suffering and will continue to suffer irreparable damage and, unless JCS is enjoined from continuing these wrongful acts, the damage to GTL will increase.

68.      In addition to an injunction, GTL is also entitled to profits, damages and costs from JCS, as provided by law, including punitive damages and attorneys' fees, in an amount to be determined at trial.

**WHEREFORE**, GTL respectfully requests that the Court enter judgment against JCS and award:

(a)      Under 15 U.S.C. § 1116, JCS and its agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations, and others in privity and acting in concert with them be permanently enjoined from:

(i)      Using the GTL Marks and any other mark containing or consisting, in whole or in part, of the term "Global Tel Link," "OffenderConnect," and any other mark confusingly similar to the GTL Marks, including, in the advertising, offering for sale, and/or sale of products or services that may reasonably be encompassed by the GTL Marks or which may constitute a natural zone of expansion for GTL, including but not limited to any use in connection with correctional facility telephone services;

(ii)      Using any service mark, trademark, trade name, trade dress, word, domain name, number, abbreviation, design, color, arrangement, collocation, or any combination thereof, which would imitate, resemble, or suggest the GTL Marks;

(iii)      Otherwise infringing the GTL Marks;

(iv)    Unfairly competing with GTL or otherwise injuring its business reputation in any manner;

(v)    Publishing any telephone, directory, or Internet listing using the GTL Marks and any other mark containing the terms "Global Tel Link" or "OffenderConnect" and any other mark confusingly similar to the GTL Marks, in the advertising, offering for sale, and/or sale of goods or services that may reasonably be encompassed by the GTL Marks, or which may constitute a natural zone of expansion for GTL;

(vi)    Using or registering any domain name which is confusingly similar to the GTL Marks in advertising, offering for sale, and/or sale of: a domain name registration; correctional facility telephone services; or any other goods or services that may reasonably be encompassed by the GTL Marks, or which may constitute a natural zone of expansion for GTL;

(b)    Under 15 U.S.C. § 1118, JCS be directed to deliver up for destruction all goods, advertisements, labels, signs, prints, packages, wrappers, receptacles, computer memory, data, computer programs, software, or any other media, and all other materials in its possession or under its control bearing the GTL Marks or any other mark containing the terms "Global Tel Link" or "OffenderConnect," or any reproduction, counterfeit, copy or colorable imitation of the GTL Marks, and all plates, molds, matrices, and other means of making or duplicating the same;

(c)    Under 15 U.S.C. § 1117, JCS account and pay to GTL damages in an amount sufficient to compensate it fairly for the injury it sustained, plus all profits that are attributable to JCS's sale of goods and services under the GTL Marks, and further that the amount of the monetary award be trebled in view of the willful and deliberate nature of JCS's unlawful conduct;

14

(d)    Under 15 U.S.C. § 1117, JCS be ordered to pay GTL its attorneys' fees and costs;

and

(e)    Any further relief as this Court may deem equitable and proper.

Dated: January 17, 2013                    Respectfully submitted,

Michael R. Sklaire, Va. Bar No. 74354
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, Virginia  22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
sklairem@gtlaw.com

Steven J. Wadyka, Jr. (subject to *pro hac vice* admission)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C.  20037
Telephone:  (202) 331-3100
Facsimile:  (202) 261-0135
wadykas@gtlaw.com

Jon A. Schiffrin, Va. Bar No. 67542
Schiffrin & Longo, P.C.
8201 Greensboro Drive, Suite 300
McLean, VA 22102
Telephone:  (703) 288-5248
Facsimile:  (703) 288-4003
jon@schiffrinlaw.com

*Counsel for Global Tel\*Link Corporation*